SCHOTT, Judge,
dissenting in part:
I respectfully dissent from the affirmation of the judgment on the reconventional demand but concur in affirming the judgment on the main demand.
According to plaintiff’s employee Armstrong, when he was notified by the insurance company in January that the additional premium was required he spoke to defendant and Mrs. Briscoe about it, but they informed him that they did not want to spend any more money for insurance. Therefore, his only recourse was to have the policy cancelled. A check for return of premium in the amount of $187 was sent to him by the insurance company. He testified that he spoke to Mrs. Briscoe on different occasions to tell her that he had the return of premium and if she wanted to get insurance with another company this was up to her. All he required was a loss pay *559 able clause in his company’s favor on the policy and the return of premium could be used toward the premiums on the new policy. No insurance was ever obtained by the Briscoes and the refund was credited to defendant’s account in April, 1977.
According to Mrs. Briscoe, she got a call from Armstrong after the first accident and was informed that the policy was cancelled but she received no other notice from him until he called to tell her that he had received the $187 return of premium. She informed him to place it on more insurance and was under the impression that he had procured other insurance until after the second accident.
In his reasons for judgment the trial judge made the following findings:
“The testimony at trial, which was uncon-tradicted, showed that SUN FINANCE was capable of, and in fact, did, secure original coverage on said vehicle. Further, this was accomplished by BRISCOE simply by agreeing to allow SUN FINANCE to obtain this coverage and include said cost in the monthly note. The Court is also impressed with the fact that once this coverage was cancelled the draft for unearned premiums was forwarded to SUN FINANCE, designated them as payee, and said check endorsed by them and applied to the Briscoe account.
The Court was not impressed with the testimony of Mr. Armstrong, the employee of SUN FINANCE and is of the opinion that SUN FINANCE obligated itself to perform an act for BRISCOE, i. e., acquire additional insurance and failed to do so without explanation.”
* * * * * *
“Due to the fact that SUN FINANCE had acquired insurance coverage initially through no effort on part of BRISCOE and required coverage as loss payee, and that insurance premiums were part of the monthly note, BRISCOE had every reason to believe that SUN FINANCE would perform what they said they would do, or at least, inform them that coverage could not be obtained.”
The court reasoned that this evidence established a legal relationship between plaintiff and defendant requiring plaintiff to act in good faith to secure insurance coverage. He reasoned that plaintiff had become an agent of defendant and violated its duty as an agent.
We are confronted with a clear-cut credibility call by the trial judge rejecting Armstrong’s testimony and accepting Mrs. Bris-coe’s. While I am reluctant to disturb such a finding I have concluded from the facts and circumstances in the record that this particular finding was clearly wrong.
First of all, in the above quoted reasons it appears that the trial judge was influenced by the fact that plaintiff had so easily gotten insurance for defendant when the financing of the vehicle was arranged. However, the original policy was not written with the understanding that plaintiff’s seventeen year old son would be the principal operator, and when this factor became known a substantial increase in premium was required. The insurance was readily available but Briscoe would have to pay for it. The amount included in the note for insurance was simply not enough.
Secondly, the trial judge specifically was impressed with the fact that the unearned premium was accepted by plaintiff and applied to defendant’s account, but this fact is not significant considering that R.S. 6:956(F) specifically authorizes the finance company to credit the return of premium to the installments on the retail installment contract where the policy is cancelled.
The trial judge felt that Briscoe had a reasonable basis for believing that plaintiff would obtain insurance coverage because it had initially procured such coverage and had included the insurance premium in Briscoe’s monthly note. However, I fail to see any connection between the procuring of the initial coverage and plaintiff’s alleged duty to procure the substitute coverage. In order to determine whether plaintiff had such a duty to defendant, the conduct of the parties after cancellation of the first policy must be considered. Obviously, *560 plaintiff wanted defendant’s automobile to be insured for collision and comprehensive coverage so that its collateral for the note would be protected. The initial premium for the insurance policy was only $383 but Armstrong was notified that an additional $227 would be required in order to maintain coverage with defendant’s son as the principal operator of the automobile. It would make no sense for Armstrong to tell Mrs. Briscoe that he would go out and procure other insurance with the $187 which had been refunded when he knew this was impossible. His motive was not to get an additional credit on the note because his conversations took place with Mrs. Briscoe beginning in January, just after the policy was cancelled, and not until April did he credit the account with the refund. In order to accept Mrs. Briscoe’s testimony on the point I would have to believe that Armstrong made no protest, asked for no additional payment and acquiesced in the impossible task of acquiring the insurance for the little amount which had been refunded.
Finally, the trial judge indicates that Briscoe’s reliance on plaintiff to function as his insurance agent was partially based on the fact that he knew insurance premiums were part of the monthly note. However, Mrs. Briscoe testified (at page 85) that after her son had the second accident she read plaintiff’s documents for the first time and learned that the insurance was included in the note. She went on to say that she did not make any more payments because those payments were not repairing the automobile after the second wreck. Thus, her reliance could not be based on the inclusion of insurance payments in the note when she was unaware of the inclusion until after the second wreck.
I have concluded that the evidence does not support any theory of agency or estop-pel on which plaintiff’s liability to defendant for damages arising out of the second accident could rest and the judgment on the reconventional demand should be reversed.